UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


RAHEEM NADER, M.D.,

       Plaintiff,

v.                             Civil Action No. 2:14-cv-24993

THOMAS PRICE[1],
United States Secretary of Health and Human Services,

       Defendant.

MEMORANDUM OPINION AND ORDER

       Pending are the parties' cross-motions for summary judgment.  One was filed by plaintiff Raheem Nader on September 30, 2015, and the other by defendant Secretary of the United States Department of Health and Human Services (the "Secretary"), on October 29, 2015.


I.   Factual and Procedural Background


       Plaintiff Radeem Nader is a retired physician, now in his eighties, who practiced in Charleston, West Virginia, for many years.  This case involves a series of reimbursements that plaintiff sought and received over the course of almost four

---

[1] When this case was originally filed, Sylvia Mathews Burwell was the United States Secretary of Health and Human Services, but on February 10, 2017, Thomas Price succeeded Burwell as Secretary of Health and Human Services.

years for services that he billed between January 1, 2004, and

October 26, 2007.  Administrative Record 40, 49-50 (hereinafter

"AR").

Plaintiff retired his practice on March 31, 2008.

AdvanceMed, which is the Medicare Program Safeguard Contractor

for West Virginia, indicated in a letter dated March 17, 2008

and addressed to the medical reviewer who would be performing an

audit of plaintiff's records, that AdvanceMed had conducted a

ten-patient "probe" into the services for which Nader had been

reimbursed over the period from January 1, 2004, to October 26,

2007.  AR 1350-51.  The Secretary identifies March 17, 2008, as

the date of reopening of plaintiff's claims.  AR 49.

AdvanceMed's full post-payment review audit had found that 98.7%

of insurance claims for Nader's services should not have been

reimbursed by Medicare.  AR 4.

It is noted that a provider bills Medicare for claims,

and Medicare then must quickly determine whether the claims

appear regular on their face and, if so, notifies the provider

in what is designated an "initial determination"[2] that it will

---

[2] Federal Medicare regulations prescribe in a section captioned
"Initial Determinations" as follows:

> After a claim is filed with the appropriate
> contractor in the manner and form described in subpart
> C of part 424 of this chapter, the contractor must—

pay that which is referred to as "clean claims."  See 42 C.F.R.

§ 405.922 (2008).  The Administrative Law Judge ("ALJ") below

found that with respect to all claims at issue here, plaintiff

was notified through initial determinations by Centers for

Medicare and Medicaid Services ("CMS") on or after March 17,

2004 that Medicare would pay such clean claims.  AR 50.  In

light of the ALJ's determination that reopening occurred on

March 17, 2008, the ALJ found that all claims were therefore

reopened within the four-year limitations period extending from

March 17, 2004, to the date of reopening determined by the ALJ

to be March 17, 2008.  Id.

CMS, through its contractor Palmetto GBA, provided

formal notice of the overpayment determination to Nader in a

letter dated June 29, 2009, and demanded repayment.  AR 1229-34.

Nader appealed the overpayment determination through all four

levels of appeal at the Department of Health and Human Services

("HHS").  The overpayment amount was adjusted down from

---

> (a) Determine if the items and services
> furnished are covered or otherwise reimbursable
> under title XVIII of the Act;
> (b) Determine any amounts payable and make
> payment accordingly; and
> (c) Notify the parties to the initial
> determination of the determination in accordance
> with § 405.921.

42 C.F.R. § 405.920.

$426,631.53 to $350,548.00 at the second level of appeal by the Qualified Independent Contractor, a panel composed of physicians and nurses.  Resp. 8 n.2; AR 225-49.  The ALJ rejected plaintiff's challenge on December 7, 2011, finding that plaintiff was not without fault with respect to the overpayments at issue.  The Medicare Appeals Council ("MAC") confirmed the ALJ's ruling on February 8, 2012, constituting the final administrative decision of the Secretary.  Plaintiff brought this civil suit under 42 U.S.C. § 1395ff(b), appealing the MAC's decision to uphold Medicare's assessment of the overpayment.

Plaintiff contends that the decisions by the ALJ and the MAC were unsupported by substantial evidence and requests summary judgment on that basis.  Alternatively, plaintiff argues that the Secretary's assessment should be waived or reduced because plaintiff had retired by the commencement of the audit, was not afforded any opportunity to cure defective claims records thereafter, was without fault with respect to any non-covered claims, and in any case should succeed on estoppel grounds.  Conversely, the Secretary asks for summary judgment because all of petitioner's arguments are without merit.

## II.   Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Material" facts are those necessary to establish the elements of a party's cause of action.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (same).  A "genuine" dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-moving party.  Anderson, 477 U.S. at 248.

At bottom, a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find for the non-moving party.  Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).  Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.

### III.  Discussion

42 U.S.C. Section 1395w-22 provides the relevant cause of action.  "If the amount in controversy [of an overpayment] is $1,000 or more, the individual or organization shall, upon notifying the other party, be entitled to judicial review of the Secretary's final decision as provided in section 405(g) of this title, and both the individual and the organization shall be entitled to be parties to that judicial review."  42 U.S.C.A. § 1395w-22 (West).  Section 405(g) states that "[t]he findings of the [Secretary[3]] as to any fact, if supported by substantial evidence, shall be conclusive, . . ."  42 U.S.C.A. § 405(g) (West).  Medicare regulations require that reimbursable medical procedures be "reasonable and necessary" and provide the appropriate standards for making this determination.  See 42 C.F.R. § 411.15(k).

The Administrative Procedure Act empowers a court to set aside certain agency actions and findings when they are "unsupported by substantial evidence in a case . . . otherwise reviewed on the record of an agency hearing provided by

---

[3] Section 405(g) is written to apply to the Social Security Administration ("SSA"), but its essence has been incorporated into Section 1395w-22 and other HHS statutes, substituting the Secretary for the SSA Commissioner as appropriate.  The text has been modified to reflect this substitution.

6

statute."  5 U.S.C.A. § 706(2) (West).   Substantial evidence

means "more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to

support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401

(1971) (citations and quotation marks omitted) (expositing

"substantial evidence" in the context of the National Labor

Relations Act).   "[R]eview under this standard is highly

deferential, with a presumption in favor of finding the agency

action valid."  Almy v. Sebelius, 679 F.3d 297, 302 (4th Cir.

2012) (citations and quotation marks omitted) (noting this

deference is especially important in the Medicare context, where

regulations are highly complex).

      The MAC's decision is the final decision under review

in this action.  See 42 C.F.R. § 423.2130; Almy, 679 F.3d at 300

("[A] party can bring a civil action in federal court to review

a final decision of the Secretary (through the Medicare Appeals

Council).").  However, as the MAC observed in its decision in

this case, Medicare regulations require that the MAC confine its

review to the record before the ALJ unless good cause is shown

for submitting new evidence.   42 C.F.R. § 405.1122(c).

Plaintiff did not submit new evidence at the MAC review level,

except for evidence duplicative of that already in the record,

and plaintiff acknowledges that the evidentiary showing at the

7

ALJ hearing is the crux of the review here.   Pl.'s Mem. in Supp.

of Summ. J. 3 (hereinafter "Pl.'s Mot.").

As a threshold matter, plaintiff argues that Medicare

did not timely reopen the reimbursements at issue.   Medicare

rules that were in effect until July 15, 2012, provided as

follows:

> Time frames and requirements for reopening
> initial determinations and redeterminations initiated
> by a contractor.  A contractor may reopen and revise
> its initial determination or redetermination on its
> own motion—
>
> . . . .
>
> (2) Within 4 years from the date of the
> initial determination or redetermination for good
> cause as defined in § 405.986.

42 C.F.R. § 405.980(b) (2008).  The ALJ determined that each

initial determination of reimbursement had been provided by CMS

to plaintiff under 42 C.F.R. § 405.922 on or after March 17,

2004.  AR 50.  The ALJ reasoned that

> [t]he first evidence of reopening in the file is a
> March 17, 2008 letter that indicates that AdvanceMed
> had already conducted a 10-patient probe sample prior
> to that date. In the absence of any documentation
> supporting an earlier reopening, we take that March
> 17, 2008 date as the beginning of the reopening.

AR 49.   Plaintiff does not explain how this decision evinces an

abuse of discretion or error by the ALJ.  The statute itself

8

simply permits that claims "may be reopened" within four years

of the "initial determination"; it does not require the

Secretary to dispatch notice of reopening to a provider. 42

C.F.R. § 405.750(b)(2) (2008).[4] CMS notified plaintiff of all

initial determinations at issue here on or after March 17, 2004,

AR 50, and the March 17, 2008, letter clearly refers to the

"audit" of plaintiff's records, AR 1350. The ALJ thus

reasonably concluded that the Secretary had timely reopened

plaintiff's reimbursement claims by March 17, 2008. Although

the court observes that the Secretary may be better served to

reopen overpayments by sending a formal notice that an audit has

been commenced to a provider, the court cannot find under its

deferential standard of review that the ALJ erred in finding the

reopening timely.

The MAC's opinion below noted that

> [t]he appellant presents no specific contentions of
> ALJ error and points to no evidentiary basis for
> disagreement with the ALJ's decision, but states that
> he 'objects' or otherwise disagrees with the ALJ's
> decision as 'not proper.' . . .

---

[4] In response to the court's December 15, 2016 Order, the parties submitted supplemental briefing explaining the timing of reopening. A Medicare reopening must take place before a redetermination can be calculated, but Medicare regulations do not require that notice of a reopening be sent to a provider; rather, only a notice of a redetermination need be given. 42 C.F.R. § 405.982(a). See also Def.'s Resp. to Dec. 15, 2016 Order 3. The Secretary did issue a notice of the redetermination to plaintiff on July 6, 2009. AR 1261-67.

> The appellant also argues that the contractor's audit
> and overpayment assessment are 'inequitable,' as the
> appellant closed his practice prior to the audit."

AR 11.  Plaintiff's briefing here recapitulates the same
arguments, and they are no more availing.

1.

Plaintiff contends that the Secretary's decision is
unsupported by substantial evidence.  Plaintiff argues that "no
evidence" was presented at the ALJ hearing.  Pl.'s Mot. 3.  By
this, he appears to mean that the only evidence presented was
his testimony, "presented . . . through his bookkeeper and
medical billing secretary, Toni Gegar, and through the plaintiff
himself, . . ."  Id. 4.

Plaintiff's version of events does not match reality:
the ALJ reviewed numerous medical and insurance documents,
including plaintiff's own claims records, in making his
findings.  A spreadsheet tabulated the various claims at issue,
and the ALJ provided a general analysis of claims in his
opinion.  See AR 49-55.  The ALJ's analysis specified which
claims codes were at issue in plaintiff's case.  AR 51-52.  This
analysis explained in detail why various claims were not
reimbursable.  For example, the ALJ noted that for debridement

10

claims – a claim for a procedure that cleans a wound - no description of the wound was included to demonstrate that it fulfilled Medicare guidelines.  AR 52.  With respect to certain claims for skin grafting, the claims submitted by plaintiff required that the grafts were surgically fixed rather than applied via gauze wraps, and yet plaintiff did not use surgical fixation.  AR 53.  With respect to "evaluation and management services" claims, plaintiff billed a code limited to services that are separate from the underlying medical procedure, but in fact the ALJ found that the services actually performed occurred in consort with the underlying procedure.  AR 54.  Plaintiff does not specifically explain how any of the ALJ's coverage findings were in error.

As noted, the ALJ observed in numerous instances that there simply was not sufficient evidence – including but not limited to sufficiently descriptive claims records – to justify coverage for particular claims.  AR 52-55.  Plaintiff points to the passage of time and the closing of his office as reasons why he could not provide additional evidence clearing up particular claims.  Pl.'s Mot. 4.  He argues that "the basis for the denial was primarily simple coding errors and failure to document."  Pl.'s Reply Mem. to Def.'s Mot. Summ. J. 4.  Plaintiff also objects that he was not given opportunities to cure any

deficiencies in his record-keeping prior to the overpayment assessment by Medicare and that, had so much time not passed and had his office not closed, he could in fact have cured such deficiencies via re-submission of claims.  Id. 6.  The vagaries of time, however, do not excuse a party from having to make out his case before the Secretary by a preponderance of the evidence, and plaintiff has not done so here.

Furthermore, the ALJ's decision rested on more than simple bookkeeping errors.  He reasoned that many claims were not reimbursable in substance.  See AR 52-55.  For example, plaintiff's skin grafting procedures were not reimbursable under codes that required surgical fixation.  AR 53.  In addition, plaintiff's evaluation and management ("E/M") claims, which composed a substantial portion of the claims denied, consistently involved the underlying procedure and "did not reflect any separate E/M service provided."  AR 54.  As such, plaintiff's argument that he should have been permitted to "correct" his records is unpersuasive, as he provides no evidence that clerical errors provided the basis for the ALJ's decision.

Plaintiff also argues explicitly that his records were "unavailable" after closure of his office.  Pl.'s Mot. 9. Plaintiff testified that his office manager had passed away by

12

the time of the hearing before the ALJ in this matter, although

his "bookkeeper and medical billing secretary," Toni Gegar, did

offer testimony at the hearing.  See AR 42.  It appears that

plaintiff had multiple staff members who directly administrated

claims, at least one of whom was able to offer testimony in this

matter.  Ms. Gegar testified during the ALJ hearing that she

received guidance from Medicare officials on how to complete

reimbursement paperwork and was informed that she was billing

correctly for the claims at issue.  See id.  Ms. Gegar also

testified that after plaintiff's practice had closed, she could

have "call[ed] for [claims records]" in order to retrieve them

because they were packed away in boxes.  AR 6169.

        The ALJ's conclusion that the services at issue were

not "reasonable and necessary" under Medicare regulations was in

fact substantiated.  Contrary to plaintiff's protestations,

Medicare regulations, not the judgment of an individual

physician, provide the appropriate standards for what is

"reasonable and necessary."  See 42 C.F.R. § 411.15(k).  Almy

expounded on the deference that the Secretary's interpretation

of "reasonable and necessary" must be accorded.  679 F.3d at 302

("[T]he Secretary is also entitled to deference under Bowles v.

Seminole Rock & Sand Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed.

1700 (1945), for her interpretation of the regulations that

implement the Medicare Act's 'reasonable and necessary'
standard."). Plaintiff has not adduced specific evidentiary-
based arguments for why the Secretary's judgment that the
services at issue were not "reasonable and necessary" should be
overturned. In the absence of such arguments, no genuine issues
remain, and the court finds that the Secretary's decision to
assess overpayments was supported by substantial evidence.

2.

Plaintiff argues in effect that the Secretary should
waive or reduce recovery against plaintiff. Plaintiff argues
that "[t]o come back two years after the Plaintiff's office
closed, after his primary bookkeeper had passed away and his
records were unavailable and attempt to recoup in excess of
$400,000.00 shocks the conscience and violates every equitable
principle that exists." Pl.'s Mot. 9. First, however, the
overpayment assessed has been adjusted downward to approximately
$350,000, and second, plaintiff's secretary, Ms. Gegar,
testified explicitly that plaintiff could have retrieved the
records. AR 6169. With regard to plaintiff's appeal to
"equitable principle," two specific provisions in the Medicare
regulations govern the possibility of reducing or nullifying the
overpayment: the waiver provision and the limitation on
liability provision.

14

The waiver provision states as follows:

Where--

(1) more than the correct amount is paid under this
subchapter to a provider of services . . . and the
Secretary determines . . . (B) that such provider of
services or other person was <u>without fault</u> with
respect to the payment of such excess over the correct
amount,

. . . .

proper adjustments shall be made . . . .

42 U.S.C.A. § 1395gg (West) (emphasis added).  The Secretary

argues, in concurrence with the opinions of the ALJ and the MAC

below, that a party is not without fault when that party submits

services for coverage that it knows or should know are in fact

not covered.  While this interpretation of fault is not clearly

defined by the statute, it is reasonable to interpret the

statute such that actual or constructive knowledge of non-

coverage provides at least one basis for fault.  Medicare

regulations define knowledge of coverage expectations to include

the following:

. . . It is clear that the provider, practitioner, or
supplier could have been expected to have known that
the services were excluded from coverage on the basis
of the following:

(1)  Its receipt of CMS notices, including manual
issuances, bulletins, or other written guides or
directives from intermediaries, carriers, or [quality

15

> improvement organizations] . . . .
> (2)   Federal Register publications containing notice
> of national coverage decisions or of other
> specifications regarding noncoverage of an item or
> service.

42 C.F.R. § 411.406(e).   Furthermore, "[a]s a participant in the

Medicare program, [a provider has] a duty to familiarize itself

with the legal requirements for cost reimbursement."   Heckler v.

Cmty. Health Servs. of Crawford Cty., Inc., 467 U.S. 51, 64

(1984).

As the Secretary points out, the ALJ clearly

identified numerous coverage decisions, regulations, and other

guidance that put plaintiff on notice of coverage requirements.

See AR 43-49.  Most important, the ALJ identified the

requirement in 42 C.F.R. § 424.5(a) that a provider adduce

sufficient evidence to make a determination as to a claim.  The

ALJ also noted numerous additional requirements related to the

claims at issue, for example:

> CMS, Medicare Claims Processing Manual (Internet-Only
> Manual Publ'n 100-4), ch. 12, § 40.2(A)(4)(Oct. 2003):
> Specifying that E/M services are reimbursable only on
> occasions separate from the underlying medical
> procedure and not as a follow-up.
>
> Am. Med. Ass'n, Current Procedural Terminology: CPT
> 2006:  Noting that claims codes used by plaintiff here
> for skin grafts are not to be used for grafts that do
> not involve "surgical fixation."
>
> LCD L7909: Requiring that debridement claims indicate

> the specific appearance and size of the wound
> debrided.
>
> CMS, <u>Medicare Financial Management Manual
> (MFMM)(Internet-Only Manual Pub'n 100-6)</u>, ch. 3, § 90
> (Jan. 2004): Stating that if "a Provider knew or
> should have known that the payment was erroneous," no
> waiver of an overpayment shall be made.

AR 45-48.  Plaintiff had a duty to familiarize himself with

these regulations.  <u>Heckler</u>, 467 U.S. at 64.  Consequently,

under the deferential review accorded the Secretary, there is no

reason to find that the ALJ or the MAC abused its discretion in

refusing to waive plaintiff's overpayments.


        The limitation on liability provision states that

where a determination is made that coverage ought to be denied

and a

> . . . provider of services or such other person, as
> the case may be, did not know, and could not
> reasonably have been expected to know, that payment
> would not be made for such items or services under
> such part A or part B of this subchapter,
>
> then to the extent permitted by this subchapter,
> payment shall, notwithstanding such determination, be
> made for such items or services . . . .

42 U.S.C.A. § 1395pp (West).  Plaintiff claims that this

limitation should be applied in his case to reduce or eliminate

the overpayment that he now owes.  His reasoning, however, is no

more compelling than it is regarding the waiver provision.

Plaintiff is charged with understanding the rules that govern

Medicare reimbursement.  Although the court is not without

sympathy for an individual who has retired his practice and may

not have sufficient funds to repay Medicare, its review is

limited to determining whether HHS and the Secretary abused

their discretion in assessing the overpayment.  Almy, 679 F.3d

at 302.  The court finds that they did not and that the

Secretary's decision is supported by substantial evidence.  To

hold otherwise would be to invite circumvention of Medicare

reimbursement regulations whenever retiring a practice is an

option for a physician.  Plaintiff has not submitted material

evidence capable of preventing summary judgment.[5]

---

[5] Plaintiff also argues that Medicare should be equitably
estopped from recovering because his staff relied on government
officials in their record-keeping practices.  Estoppel rarely,
if ever, lies against the government.  See Office of Pers. Mgmt.
v. Richmond, 496 U.S. 414, 427 (1990) (applying the
Appropriations Clause to hold that estoppel was not appropriate
to prevent recovery of a benefits overpayment because "not a
single case has upheld an estoppel claim against the Government
for the payment of money").  In fact, "[t]he natural consequence
of a rule that made the Government liable for the statements of
its agents would be a decision to cut back and impose strict
controls upon Government provision of information in order to
limit liability."  Id. at 433.  The court sees no reason to
effect this consequence here, and consequently, the estoppel
argument is not persuasive.

## IV.   Conclusion

Accordingly, it is ORDERED that the motion for summary judgment filed by plaintiff be, and it hereby is, denied.  It is further ORDERED that the motion for summary judgment filed by defendant, be, and it hereby is, granted.

The Clerk is requested to transmit copies of this order to all counsel of record and any unrepresented parties.

DATED:  March 16, 2017

John T. Copenhaver, Jr.
United States District Judge

19